# Adler *v.* Pin *et als.*

## *Trover.*

1. *Proof of declarations of intestate in action against administrator.* The statutory exclusion of testimony as to transactions with, or state-ments by, a deceased person, whose estate is interested in the result of the suit (Code, § 3058) extends to both the adversary parties; and where the effect of the testimony of an administrator as to declarations made by his intestate, explanatory of his possession of certain property, would be to increase the assets of the estate, such testimony is not ad-missible against the opposing party.

2. *Estoppel ; nature of, and when enforced.*—The doctrine of estoppel has its origin in good morals, and in considerations of good faith, and its underlying principle is, that declarations or admissions, express or im-plied, made for the purpose of influencing the conduct of another, if the designed effect ensues, are conclusive upon the party making them ; but an estoppel, being in its nature defensive, will not be used to ef-fectuate a gain, and will not be enforced further than is requisite to pro-tection from injury.

[Adler v. Pin et als.]

3. *Same; estoppel en pais; what does not operate as.*—Where an administrator demanded certain personal property as assets of his decedent's estate, and it was surrendered to him by the parties in possession without objection, or the assertion of any adverse title in themselves, and it was appraised and included in the inventory of the administrator and subsequently sold under an order of the Probate Court; but prior to the sale the parties notified the personal representative of their claim to the property and warned him not to sell the same: *Held,* in an action of trover against the administrator, that while the delivery of the property, without asserting title, was a strong admission, it did not constitute an estoppel when the defendant was notified of the claim before a sale, and in time to prevent injury. *Held,* further, that while the administrator incurred a *prima facie* liability by having the property appraised and returned in his inventory, such *prima facie* liability is not available to him as a defense in the present suit as he was not concluded by the appraisement or inventory, but could have so amended it as to omit the property on discovering that it did not belong to the estate.

APPEAL from Perry Circuit Court.

Tried before Hon. Jno. P. HUBBARD.

This was an action of trover brought by Martha J. Hudson and Loumalia Pin, against Emanuel Adler to recover damages for the conversion of a mule and cow; and was commenced on Feb. 15, 1885. Issue was joined on the plea of not guilty; the trial resulting in a verdict and judgment for the plaintiffs. As shown by the evidence, plaintiffs deduced title to the property, the subject of the alleged conversion, by gift from their grandmother, Jennie Adams, who had acquired it by parol gift from her husband, June Adams. The plaintiffs and their grandmother and the said Adams had long lived together on the same premises, and continued to do so until the death of Adams and his wife, which occurred in 1884. On the 23d October of that year, letters of administration on the estate of the said June Adams were granted to the defendant, Emanuel Adler; and shortly thereafter, in his capacity as administrator, he demanded of the plaintiffs the property in question, claiming it as assets of his decedent's estate and subject to administration. In accordance with this demand, the mule and cow, the subject of the suit, were surrendered to the defendant, and appraised and included in his inventory; and subsequently sold in pursuance of an order of sale granted by the Probate Court. The evidence shows that at the time of defendant's demand for the property, the plaintiffs interposed no protest or objection, and asserted no adverse title in themselves; but prior to the sale they notified the defendant of their claim and warned him not to proceed with the sale.

As further shown by the bill of exceptions, the defendant, testifying in his own behalf, offered to prove that Adams, when about to obtain advances from the witness in the early part of the year 1884, "told him, defendant, that he had two mules on

[Adler v. Pin et als.]

said premises which were his, Adams' property," the plaintiff objected, the court sustained the objection, and the defendant duly excepted. Among other instructions, the court charged the jury, "that if the defendant demanded of the plaintiffs the property which belonged to the estate of Adams, and they delivered to him, as administrator, the mule and cow, as a part of said estate; and he thereupon had the same appraised and included in his inventory, without objection on their part, and without any notice or information that they claimed any right or title to said property, or any part thereof, that yet, if the property really belonged to them, at the time, and if they afterwards, and before the sale thereof by the administrator, notified him that they claimed the same, and forbade the sale thereof, that they would not thereby be estopped from setting up their title, and recovering damages, if otherwise entitled to recover for the conversion thereof in this suit." To this charge the defendant excepted; and here assigns the same (with other grounds of error not insisted on in argument), and the refusal of the court to admit the declarations of appellant's intestate, explanatory of his alleged possession of the property, as error.

BROOKS & ROY, for appellant.

J. W. BUSH, contra.

CLOPTON, J.—While it is admissible to prove the declarations of a party in possession of property, as explanatory of his possession, they must be proved by a witness competent to testify. As an exception to the competency of parties as witnesses, the statute provides: "Neither party shall be allowed to testify against the other, as to any transaction with, or statement by, any deceased person whose estate is interested in the result of such suit." The effect of the testimony of the defendant, which was excluded by the court, would have been, if believed, to increase the amount of the assets of the estate. In such case, the personal representative is incompetent to testify, as against the other party, to transactions with, or statements by his intestate. The exclusion extends to both the adversary parties.—Code, § 3058; Dunlap v. Mobley, 71 Ala. 102.

The only other assignment of error, insisted upon in argument, is the charge of the court, relating to the question of estoppel. On the hypothesis of the instruction as given, the question arises, whether the plaintiffs are estopped from proving their title and ownership in this suit, because when the defendant, as administrator, demanded of them the property which belonged to the estate of his intestate, they delivered to him the property in question as a part of the estate, and he

23

[Adler v. Pin et als.]

thereupon had it appraised and included in his inventory with-out objection from the plaintiffs, and without notice, that they claimed the property, but was notified of their claim before a sale?

The doctrine of estoppel is founded upon the primary and ultimate aims of the law—the redress of wrong, the prevention of fraud, and the promotion of the ends of justice. Having its origin in good morals and in considerations of good faith, its operation and effect are useful and beneficent, when its application is confined to cases, where it is manifest, that the acts or statements, on which another has relied and acted, can not be retracted, "without a breach of faith on the one hand, and injury on the other." The underlying principle is, that declarations, or admissions, express or implied, made for the purpose of influencing the conduct of another, if the designed effect ensues, are conclusive upon the party making them. What one person has induced another to believe and act on to his detriment, will, as between them, be regarded as true. But an estoppel, being in its nature defensive, will not be used to effectuate a gain; and will not be enforced, further than is requisite to protection from injury.—2 Smith's Lead. Cases, 858 to 865.

An essential element of an estoppel is injury, as the legal result of the wrongful acts, or admissions, or of culpable silence. The rule of estoppel only precludes from alleging and proving the truth, when to gainsay the assertions or admissions, on which the other party has relied; and which have induced a particular course of action, will result in injury. To raise an admission from the rank of evidence to that of an estoppel, it must not only be inconsistent with the evidence proposed to be given in a subsequent controversy, but must also have so influenced the conduct of the other party, that loss or injury will result from allowing the evidence to be introduced.—*Miller v. Hampton*, 37 Ala. 342; *Patterson v. Lyttle*, 11 Penn. St. 53. It is claimed that injury has resulted from the conduct of the plaintiffs, because the defendant, acting on their conduct and silence, had the property appraised and included in his inventory, thereby incurring a liability to account for its value to those interested in the estate. *McCravey v. Remson*, 19 Ala. 430, is cited and relied on. It is true, that in the opinion the estoppel is based on the facts, that the executor acted on the admissions of the legatee, who delivered the slave to him on his demand, had her appraised and inventoried, and rendered himself liable to account for her value to those interested in the estate, from which liability he had not been discharged. The material fact, that the legatee, who delivered the slave, subsequently hired her from the executor, is not mentioned or referred to. Having obtained possession by a contract of hir-

[Adler v. Pin ets als.]

ing, and by recognition of the right of the executor, he would not have been permitted, without having first surrendered possession, to set up an adverse title; and the estoppel applied to the vendee, to whom he sold the slave, while thus holding possession. On the facts of the case, the conclusion of the court was correct, though based on insufficient reasons. The only authorities cited to support the opinion are cases of bailment.

The injury, requisite to make the estoppel effective, must be the legal and proximate result of the acts and silence of the plaintiffs—injury, which can not be avoided, if they are allowed to gainsay the admissions, implied from their delivery of the property as a part of the estate, without claim or objection. If the injury consists in a liability incurred, it must be a fixed liability, from which the defendant can not be discharged, if the plaintiffs are allowed to prove their title. To constitute a requisite element of estoppel, the loss or injury must be the result of the co-operative influence of the wrongful conduct or admission, and of the unsuccessful assertion, and proof of the true title, and real ownership. If the defendant can be restored to his original condition without detriment, an estoppel does not arise.—*East v. Dolihite*, 72 N. C. 562. By having the property appraised and returned in the inventory, the defendant incurred a *prima facie* liability. He is not concluded by the appraisement or inventory; but may amend it so as to omit the property if it does not belong to the estate.—*Mc Williams v. Ramsey*, 33 Ala. 813. A judgment against him for the recovery of the property in favor of the plaintiffs, as the real owners, will, in the absence of fraud or collusion in its rendition, protect him against any liability, with which those interested in the estate may seek to charge him. The assertion and proof of their title and ownership, and in consequence a recovery of the property, operates to maintain rights thus judicially ascertained to be valid, and at the same time to defeat or avoid the *prima facie* liability of the defendant and any injury that might otherwise result. And the estate is not prejudiced by the loss of property, which did not belong to the decedent. However false the admissions, or wrongful the conduct, an estoppel will not be enforced, unless necessary to prevent an innocent person from loss, by having been misled, or a guilty party from gaining an undue advantage. An estoppel is unfounded, when the successful assertion and proof of the truth itself arms the other party with security and protection against loss or injury. To enforce an estoppel, in such case, would constitute it an instrument of gain; and carry it further than justified by the necessity to prevent injury. The acts and silence of the plaintiffs created an estoppel from maintaining an action against the defendant for having taken possession of the property; and if he

had sold it before notice of their claim, they would have been estopped from alleging and proving their title. But, while the delivery of the property without asserting title is a strong admission, it does not rise to the dignity of an estoppel, when they notified the defendant of their claim before a sale, and in time to prevent injury.

Affirmed.