# Blount *v.* Blount, *et al.*

## Bill to Cancel and Remove Deed as Cloud On Title.

### (Decided Feb. 5, 1909. 48 South. 581.)

1. *Witnesses; Competency; Transaction With Deceased Person.*—
Under section 4007, Code 1907, a grantor suing the heirs of a deceased grantee to cancel a deed and expunge it from the record, on the ground that he never executed or acknowledged the deed, may testify that he did not sign or acknowledge the same, unless it is conclusively shown or conceded that he was a party to the deed or transaction.; a transaction between two persons implying action, consent, or acquiescence on the part of both..

2. *Same.*—Section 4007, Code 1907, does not render witnesses incompetent to testify generally, but only incompetent to testify on the subjects specified; so a party to a suit is not precluded from denying that he ever had a given transaction with the decedent, whose estate is interested in the result of the suit, and which transaction is imputed to him by the adverse party; but where such transaction is shown or conceded, a witness may not give his version of it, or dispute or contradict the evidence of other witnesses to prove what the transaction was, or the effect and extent thereof, unless called thereto by the adverse party.

3. *Deeds; Execution; Presumption.*—The filing for record of a deed and recording it makes the record or a certified copy thereof presumptive evidence of its execution, and prima facie proof, as between the parties thereto, of the recitals therein; but it is open to either party to show that the deed is void for any sufficient reason.

4. *Appeal and Error; Harmless Error; Exclusion of Evidence.*—
Although the chancellor recites in his opinion that the decree would have been the same with the excluded evidence admitted, yet, where it affirmatively appears that the chancellor excluded evidence which was clearly competent for the party against whom the decree was rendered, this court cannot say on appeal that the error was without injury. (Simpson and McClellan, JJ., dissent.)

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Bill by Joseph G. Blount against Lily T. Blount and others to cancel and remove a deed as cloud on title. From a judgment for defendant complainant appeals. Reversed and remanded.

The facts made by the case are that Gus Blount, the husband of Lily Blount and the father of the other re-

[Blount v. Blount, et al.]

spondents, filed for record and had recorded in the probate office of Etowah county a deed to himself from Joseph G. Blount, conveying a lot of land to said Gus Blount, reserving a life interest in Joseph G. Blount. Gus Blount died, and Joseph G. Blount filed this bill to cancel said deed and expunge it from the record, alleging that he never executed such a deed or acknowl edged the same. The deed appeared to be acknowledged; but the officer before whom the acknowledgment was alleged to have been taken was also dead. The chancellor declined to permit Joseph G. Blount to testify that he had no such transaction with his son, Gus Blount, and that he never executed or acknowledged the deed, on the theory that it was a transaction with a deceased person affecting his estate, and he denied the relief prayed.

KNOX, ACKER & BLACKMON, for appellant. There was no transaction.—*Gamble v. Whitehead*, 94 Ala. 235; *Murphy v. Hindman*, 37 Kan. 268; S. C. 68 Kan. 164; *Andrews v. Hunt*, 7 Mackey, 311; *Pillard v. Dunn*, 108 Mich. 301; *Saratoga Bank v. Leach*, 37 Hun. 336; *Evans v. Ellis*, 22 Hun. 460; *Wadsworth v. Heermans*, 85 N. Y. 639; *Eagan v. Powell*, 4 N. Y. Supp. 592; *Yuem v. Schecran*, 104 N. W. 135; *Adams, et al. v. Sanger*, 77 S. W. 254; *Brown v. Moore*, 26 S. C. 160; *Griwn v. Earl*, 34 S. C. 246; *Payne v. Long*, 131 Ala. 348; *Colfax v. Colfax*, 32 N. J. E. 407. There being no transaction the prohibition of the statute invoked does not apply, and the court erred in refusing to admit Blount's testimony that he never executed any deed to his son, and in fact did not execute the deed in question.—*Miller v. Cannon*, 84 Ala. 59; *Tisdale v. Maxwell*, 58 Ala. 40; *McCreary v. Rash*, 60 Ala. 374; *A. G. L. Ins. Co. v. Sledge*, 62 Ala. 566; *Boykin v. Smith*, 65 Ala. 294; *Killen v. Lyde*, 65 Ala. 505; *Dismukes v. Tolson*, 67 Ala.

386; *Wood v. Brewer,* 73 Ala. 259; *Goodlett v. Kelly,* 74 Ala. 213; *Payne v. Long, supra; Moffatt v. U. S.,* 112 U. S. 24.

DORTCH, MARTIN & ALLEN. and BOYKIN & BRINDLEY, for appellee. Counsel discuss the right of the administrator of Gus Blount, deceased, to intervene and defend, and cite in support of his right to intervene.— *Ex parte Printup,* 87 Ala. 149; *Leatherwood v. Sullivan,* 81 Ala. 486; 51 Fed. 480; 24 U. S. 322. Joseph Blount, the maker of the deed is not competent to testify as the other party to the deed was dead, and his estate was involved in the transaction.—Section 1794, Code 1896.— *Ware v. Burch,* 42 South. 562; *Miller v. Cannon,* 84 Ala. 59; 72 Ia. 656; 111 Ia. 538; 40 Kan. 356; 106 Ky. 278; 88 Md. 182; 35 Hun. 198; 61 Ga. 419.

MAYFIELD, J.—The serious question involved in this appeal is this: There is found on the records of the probate office—which is by law made the registry of deeds—a record of what purports on its face to be a deed by A. to B. This record on its face shows the deed to have been properly signed by A., attested by C., and acknowledged by A., before a notary, E., and filed in the probate office for record four days after it purported to have been executed. That which purported to be the original deed is lost, and the grantee is dead. In a suit between the alleged grantor and the heirs, distributees, and personal representatives of B., can A., as a witness for himself, deny that he signed this deed, or that he acknowledged that he signed it, before E., the notary? In such case the grantor is clearly a competent witness, unless he and this evidence fall within the exception of section 4007 (1794) of the Code of 1907, which exception reads as follows:

[Blount v. Blount, et al.]

"4007. Competency of Parties as Affected by Interest. —In civil suits and proceedings, there must be no exclusion of any witness because he is a party, or interested in the issue tried, except that no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding," etc.

If the proposed evidence relates to "a transaction with or statement by" B., then it is clearly not admissible. If the evidence does not relate to any such transaction or conversation with B., then it is admissible. So the question must be determined by the fact whether or not the denial by the grantor of the execution of a deed necessarily involves a transaction with the grantee. The writer is of the opinion that it does not. It may or it may not, depending upon the particular circumstances of the case. The grantor may make a deed to the grantee without the knowledge or consent of the grantee, and against his will. The grantor to a deed is a necessary party to its execution, but the grantee is not. The grantee, therefore, cannot, without the aid or consent of the grantor, make him a party to a transaction involving the execution of a deed. If the grantee should forge the name of the grantor to the deed, and forge the attestation and acknowledgment thereto, he cannot make it a transaction with the grantor by filing it for record and having it recorded without the knowledge and consent of the grantor. Nor would the fact that such a deed was thus executed and recorded by third parties, with or without the consent of the grantee, make it a transaction with the purported grantor. A transaction between two parties necessarily implies action, consent, knowledge, or acquiescence on the part of both. Hence, if

a grantor never in truth and in fact executed or attempted to execute an alleged deed to a given grantee, he is not and cannot be a party to the transaction, which on its face purports to be the execution by him of a deed to the named grantee.

The grantee, third parties, nor all combined, cannot, without his act, word, deed, knowledge, consent, or acquiescence, make such purported grantor a party to a transaction as to which he had nothing to do and to which he was not a party. He is the only party or individual who can make himself a party thereto; and to deny to him the right to testify that he was not a party to the transaction would be to put it within the power of a gantee or third parties to absolutely acquire all his property without his knowledge or consent. We do not believe that this is the law. Of course, if he did, in fact and in truth, execute the deed, and the grantee dies, and in fact there had been a transaction between them, then under the statute he is incompetent to testify as to the transaction involved in the execution of the deed; but if he in fact made no deed at all, and had no knowledge of it, he was not, and could not be made, a party to a transaction which merely on its face imports a transaction between him and a deceased person. It therefore, follows that if it be conceded, or conclusively proven, that a grantor did in fact execute a deed to the grantee, and that it constituted a transaction between the two, and the grantee is dead, the grantor is incompetent to testify as to such transaction.

The grantor in this case does not concede that he executed the deed, but denies it, if the court will let him do so; and the evidence does not conclusively prove it. His testimony is therefore competent to determine the question vel non as to the transaction between the grantor and grantee. If the court or jury should from all

the evidence find that the grantor was a party to the deed of transaction, then he is an incompetent witness; but he is competent until this is conclusively shown, or it is conceded that he was a party to the transaction in question. The other party to the suit cannot render him incompetent, by testifying that he was a party to a transaction with a deceased person through whom they claim, or by showing a chain of circumstances tending to prove he was a party to such transaction.

Filing for record a paper purporting on its face to be a deed, and recording it, makes such record or a certified copy thereof presumptive evidence of the execution of the alleged or purported deed, and is prima facie proof, in such case, as between the alleged parties thereto, of the recitals in such deed. This is a mere prima facie presumption, which the statute and the law indulge, and is not a conclusive presumption. It is open and proper for either party to dispute it, or to show that it is a forgery or a fraud, or that it is void for any sufficient reason. It is not like a judgment in a suit between the parties as to that matter. For example, if the purported deed in question here, which was filed for record and recorded, was, as a matter of fact, a forgery by the grantee or any other party, filing and recording it could not make it valid. It may in certain cases make the record, or a certified copy thereof, presumptive evidence of the recitals therein; but it is not conclusive, and does not make a forgery a valid conveyance, though it might aid the court or jury in finding the instrument in question to have been a valid conveyance. However, it is not conclusive on judge or jury—at least, not more so than the purported deed itself would be, if its execution were proven.

We are not now writing as to the probative force of such proof of execution, filing, and recording of the deed,

but as to the conclusiveness of such matters to show a transaction between the grantor and grantee. We hold that the grantor in such document, no matter what its nature, character, or recitals, is not precluded, by such proof, such filing, and such recording, from showing that his alleged signature thereto and his acknowledgment thereto are forgeries and frauds, perpetrated without his knowledge or consent. If this be not true, one man can acquire, for his estate after his death, all the property of another, without the knowledge or consent of such other, and yet do it by due process of law. We say the law is not, and ought not to be, such as to allow such proceedings or results.

We think the construction we thus place upon this statute is that which was intended by the Legislature when the statute was enacted, and that it is perfectly consistent with all the decisions of this court dealing with its construction. The statute referred to above removes all objections to the competency of witnesses in civil cases, on account of interest or of being parties to the record, except as to trnasactions or conversations with deceased persons and as to some other matters not necessary here to mention.—*Calera, etc., Co v. Brinkerhoff,* 87 Ala. 422, 6 South. 295. The effect of the exception in the statute referred to is not to render parties or witnesses incompetent to testify generally in the given case, but only incompetent to testify upon the certain subjects specified.—*O'Neal v. Reynolds,* 42 Ala. 197. Testimony of a party that he never gave any other note to a deceased person, whose estate is interested in the result of the suit or trial, does not involve a transaction with such deceased person, and is not within the exception of the statute.—*Payne v. Long,* 131 Ala. 438, 31 South. 77. In an action by a physician to recover for services rendered a deceased person, declarations of

the plaintiff as to the character of the disease which afflicted the deceased, and as to directions given by him for its treatment, made out of the presence or hearing of the deceased, do not involve a transaction had with such deceased person, within the exception of the statute. —*McDonald v. Harris,* 131 Ala. 359, 31 South. 548.

A party to a suit is not precluded by the statute from denying that he ever had a given conversation or transaction with a deceased person whose estate is interested in the result of the suit, which is imputed to him by the other party, though, if such conversation be shown conclusively or be conceded by him, he is not allowed to give his version of it, or even to dispute or contradict or corroborate the evidence of other witnesses, or facts which tend to prove what the conversation or transaction was, or the effect and extent thereof, unless called thereto by the opposing party. Authorities supra, which overrule and limit *Frank's Case,* 105 Ala. 211, 16 South. 634, to the extent that it held that the party might show what he did say or do in such conversation or transaction, but not to the extent that he could not deny he had such transaction or conversation.

We can see no reason why the rule is not the same in this case as it would be, in a criminal case, as to husband and wife. They are incompetent witnesses for or against each other in criminal cases, except in certain cases involving assaults, etc., by the one upon the other. But certainly a witness would not be rendered incompetent to testify in a criminal case because one of the parties claims that the witness is the husband or wife of the defendant; nor would a marriage license, issued according to law, bearing the names of such defendant and witness, and showing prima facie that they were husband and wife, preclude the witness from denying that he or she and the other were husband and wife—that the marriage record was either a mistake or a fraud.

If the witness and the defendant should concede, or it was conclusively shown, that they were husband and wife, then the witness would be incompetent; but until this is done such witness is as competent as any other witness.

It affirmatively and conclusively appears that the chancellor or judge excluded and refused to allow evidence of the complaint which was clearly competent; hence we cannot say that it was error without injury. True, the chancellor or judge recites in his opinion that the judgment or decree of the court would and should be the same with this evidence in or out of the case. This we cannot know or affirm.

It therefore follows that the decree appealed from must be reversed and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and DENSON, JJ., concur.

McCLELLAN, J. (dissenting).—The question presented by this appeal involves the competency vel non of the complainant to testify as a witness in denial of his execution, both in signature and acknowledgment, of a deed purported to be from the complainant, as grantor, to his son, now deceased, as grantee. The majority of the court hold him to be so competent, not inhibited by the exception in Code 1907, § 4007 (1794), and hence that the proffered testimony is admissible.

Where the competency of a witness to testify, generally or along particular lines, is raised, it is the province and duty of the court alone to determine whether the witness is competent.—*Worthington v. Mencer,* 96 Ala. 310, 11 South. 72, 17 L. R. A. 407; *Pierce v. State,* 124 Ala. 66, 27 South. 269. If he is incompetent, he cannot, of course, testify. In this connection it is not inappropriate to note that the analogy assumed by the majority

[Blount v. Blount, et al.]

to exist in cases where the marriage relation affects the competency vel non of a witness is refuted in *Pierce v. State, supra;* for, if the question of competency vel non is one solely for the court, then the premise on which my Brothers must necessarily ground their conclusion is inherently faulty. That this statement of logical sequence is true may be demonstrated by the application of the ruling, herein made, to a case where the action is on a note purporting to be executed by the defendant to a payee since deceased. The defendant offers to testify that he never executed the note. The administrator (plaintiff) objects that he cannot testify as to a transaction with his intestate. If my Brothers are correct in their conclusion in this case, the objection, though it goes to competency, must be overruled, and the proffered testimony of the defendant admitted in evidence. So the objection fails when addressed to the court. Can it avail otherwise? It cannot, for the obvious reason that the jury's function has never been understood or held to embrace the prerogative to determine the relevancy, materiality, legality, or competency of evidence, or the competency of a witness to testify, on any issue triable by a jury. On this phase of the result of the ruling of my Brothers, I can see no escape from the conclusion that never before doubted principles, fundamental in the law, are overturned.

This statute (Code 1907, § 4007, [1794] has long been among our laws, has been repeatedly construed and interpreted here, and has several times been readopted, and thus impressed with the meaning and effect ascribed to it by judicial expression; yet, as I view it, the statute is denied application to the case at bar, without reference to what this court has held was its meaning and effect, and which holding was presumptively rewritten in the statute by its readoption. If this be true, a most

familiar rule of construction of statutes is ignored. That it is true seems to me to be demonstrable from the fact that the decision of *Miller v. Cannon*, 84 Ala. 59, 63, 4 South. 204, from the mature pen of Stone, C. J., delivered in 1887, containing a summary of all previous announcements by this court, as well as affirmation of the meaning and effect of the statute, is not mentioned in the opinion in this case. From mere silence in this regard it cannot be assumed that *Miller v. Cannon* was intended to be modified, much less overruled, by the ruling in the present case. That the broad, and yet exact, pronouncement made in *Miller v. Cannon,* is inconsistent with the meaning and effect now given the statute in hand, will be shown, I think, by a quotation to be later made therefrom.

The authorities upon which the conclusion of the majority is rested are four in number. The first is *Calera Land Co. v. Brinkerhoff*, 87 Ala. 422, 6 South. 295. There the question was whether a grantee in a deed was prohibited by the statute under consideration from testifying to the handwriting of a subscribing witness to the deed; the absence of such subscribing witness being accounted for. The ruling was that he was not within the statute. The next is *O'Neal v. Reynolds*, 42 Ala. 197. In that case the inquiry involved was whether the widow of the alleged testator was a party within the provisions of the statute. The want of application of both these decisions to the question in the case at bar is apparent. The next is *Payne v. Long,* 131 Ala. 438, 31 South. 77. Payne's administrator sued Long on a note payable to Payne. Long was permitted, over objection based on the statute (section 1794), to testify in favorable response to this question: "State whether or not there was ever any other note than the one sued on given by you to any one with a condition attached to it." It

will be noted that the question asked the witness did not seek to impeach the note sued on, but in effect confessed its existence by the inquiry with reference to any other note with a condition to it.  This would suffice to eliminate *Payne v. Long* as authority for the conslusion of my Brothers in this instance.  If Long had been asked if he executed the note sued on, then the question would have been as here.  The ruling made on the quoted interrogatory may be sound, for the reason, stated in *Gamble v. Whitehead*, 94 Ala. 335, 11 South. 293, that the question was general and referred to no particular transaction with the deceased; but the cases of *Morrissett v. Wood*, 123 Ala. 384, 26 South. 307, 82 Am. St. Rep. 127, and *Wood v. Brewer*, 73 Ala. 259, do not relate, as will appear from a casual reading of them, to a status even akin to that present in *Payne v. Long*.  As an addenda to what has been before said in respect to *Miller v. Cannon, it* is proper to note that *Payne v. Long,* reaffirms that decision.

The last decision is *McDonald v. Harris,* 131 Ala. 359, 31 South. 548.  Harris sued to recover compensation for medical services rendered the defendant's testator.  The defendant offered to show by the widow and son of the deceased certain transactions between the plaintiff and deceased.  The holding was that such witnesses were incompetent to testify in that connection.  It was further ruled that these witnesses were competent to testify to conversations between the plaintiff, Harris, and these witnesses, but "the deceased was not a party to the conversations.  *  *  *  The proposed testimony (that last stated) relates to a transaction or a conversation between plaintiff and third persons, and is not within the rule."—*Wood v. Brewer,* 73 Ala. 262, supports the ruling quoted.  It seems clear to the writer that, so far as *McDonald v. Harris* bears on the question involved in

the present appeal, it negatives the soundness of the conclusion announced by my Brothers.

But we are not without authority, afforded by this court, for a conclusion opposite to that entertained by the majority. On the score of comprehensive construction of the statute *Miller v. Cannon, supra,* is all that is now necessary to note, and, concluding the whole matter, Judge Stone says therein: "We think our former interpretations of the statute we are construing, considered collectively, have established the following propositions: When the case falls expressly within either of the exceptions for which the statute makes provision, neither a party to the record, nor any one else having a vested pecuniary interest in the result of the suit, can testify against the estate of a deceased party, first as to (that is, directly relating to) any transaction with or statement by the deceased, involved in the issue on trial; second, that testimony whose direct office and purpose are to corroborate or weaken, strengthen or rebut, other evidence given of such transaction with or statement by decedent, is equally within the reason and spirit of the prohibition. When, however, the testimony does not relate directly to, nor shed any direct light on some transaction with, or statement by, the deceased adversary, then the prohibition does not apply." On the score of the purpose in the enactment of this statute this succinct statement from *Dismukes v. Tolson,* 67 Ala. 389, is serviceable: "The reason upon which this statute is based seems to be that there shall be no admissibility unless there is mutuality; that, when the lips of one party to a transaction are sealed by death, those of the other must in like manner be sealed by law."

If it is granted that the first of the two conditions defined in *Miller v. Cannon* for application of the statute is not present in this cause, can there be any doubt with

respect to the application here of the second condition? Is there any "other evidence" in this record of a transaction between the son and the father, grantee and grantor in the assailed conveyance? If there is such "other evidence," then the very letter of the second condition framed by Judge Stone is present to invoke the prohibition of the statute. There is such "other evidence," and its existence is not the subject of controversy, as this expression from the opinion of the majority will show: " Filing for record a paper purporting on its face to be a deed, and recording it, makes such record or a certified copy thereof presumptive evidence of the execution of the alleged or purported deed, and is prima facie proof, in such case, as between the alleged parties thereto, of the recitals in such deed. This is a mere prima facie presumption, which the statute and the law indulge, and is not a conclusive presumption. It is open and proper for either party to dispute it, or to show that it is a forgery or a fraud, or that it is void for any sufficient reason. * * * For example, if the purported deed in question here, which was filed for record and recorded, was as a matter of fact a forgery, by the grantee or any other party, filing and recording it could not make it valid. It may in certain cases make the record, or a certified copy thereof, presumptive evidence of the recitals therein; but it is not conclusive, and does not make a forgery a valid conveyance, though it might aid the court or jury in finding the instrument in question to have been a valid conveyance. However it is not conclusive on judge or jury—at least, not more so than the purported deed itself would be, if its execution were proven." From this premise it is difficult, if not impossible, to understand how the testimony under consideration can be held admissible, unless the second condition defined in *Miller v. Cannon* is unsound.

[Blount v. Blount, et al.]

But my Brothers misunderstand, I think, the conten-
tion of the solicitors for appellees, and the learned judge
who presided below, for no one of them, nor any one
else, for that matter, has asserted or insisted that the
presumption against the commission of a crime—forgery
—here imputed, it seems, to both the dead son, gran-
tee, and to the dead notary, or the presumption always
indulged against fraud until it is proven, were conclu-
sive; but it was insisted and ruled below, and once
here on this appeal, that to overcome the prima facie
presumption of purported due execution, absence of
fraud, and innocence of the crime of forgery imputed,
the burden was on the complainant to maintain in
proof his allegations, and to do so the statute inhibited
him from testifying against the prima facie evidence of
a transaction with the deceased whose estate would be
diminished, and that of complainant enhanced, if the
conveyance was held to be invalid. What is the prima
facie evidence of a transaction between the father and
son, purported grantor and grantee, respectively, to be
read from the recitals of the instrument? They are:
(a) The recital of the consideration, besides love and
affection, of $5, paid by the grantee to the grantor; (b)
the recital that the grantor "signed, sealed, and deliv-
ered these presents" on the date named. In the light
of these recitals and their truth, because fraud and
crime are never presumed, but must be proven in such
cases, can it be said that there was no "other evidence"
of a transaction against which the proffered testimony
of the complainant, purported grantor, was directed
with the view to the weakening or rebuttal thereof, as
defined in *Miller v. Cannon*. And in this connection it
may be properly inquired whether there is any room
for the suggestion that one may become a grantee in a
deed without his knowledge; for in this instance we have

the recital by the assailant of the instrument that he received from his purported grantee $5 and also that the instrument was delivered according to its purpose. The prima facie presumption is that both statements are true.

What is a transaction within this statute was defined in *Wood v. Brewer*, 73 Ala. 262. The definition there is approvingly quoted in *McDonald v. Harris*, 131 Ala. 366, 31 South. 549, among others of our decisions. It is "some act done by the deceased, or in the doing of which he personally participated." The prima facie transaction shown by the deed, fair on its face, is patently within the definition.

Furthermore, another consideration, allied to those before stated, demonstrates, I think, the existence, at least prima facie, of a transaction between the parties named in the instrument. That consideration is the theory on which the complainant's bill is filed. Its object is to expunge from the records an instrument purporting to be a deed. It must confess, prima facie, a transaction evidenced by the assailed instrument, and aver and sustain in proof the extrinsic facts necessary to destroy that which, if unimpeached, is fair. If no proof is offered to support the allegation of fraud or crime, of course, the complainant must fail. Until the presumption in favor of the instrument is overcome, the instrument, including, of course, its recitals, must be taken as true. According to the test referred to in *Wood v. Brewer* and *McDonald v. Harris*, it must necessarily be presumed that, if living, the younger Blount, purported grantee, could speak, in support of the validity of the deed, of the fact that he paid the $5 as recited therein and of the fact of the recited delivery of the instrument to him. If so, the rule of mutuality stated in *Dismukes v. Tolson, supra*, must prohibit the living

17—8

party to the transaction from testifying in respect to it.

But, aside from the foregoing considerations, this court, as early as *Kirksey v. Kirksey,* 41 Ala. 626, and as late as *Ware v. Burch,* 148 Ala. 529, 42 South. 562, has ruled in denial of the admissibility of the testimony under consideration. In *Kirksey v. Kirksey* the personal representative claimed as a credit, on final settlement, a note executed by the decedent and payable to him. The credit was contested by the widow on the ground that the note was not executed by the decedent, nor by any one authorized to bind him in the premises. On this issue the distributees were offered to testify in reference to decedent's signature to the note. They were held to be incompetent, and in the course of decision on this point the rule of mutuality before mentioned was thus invoked: "To allow the administrator to testify as to the signature to the note in controversy would be allowing him to testify as to a transaction with the intestate, within the meaning of the statute, and he would, therefore, be an incompetent witness under the act for that purpose; and hence the other parties must be held to be incompetent." It will be noted that the court held the distributees incompetent to testify in denial of the transaction the note "purported" to show. In *Ware v. Burch* the question grew out of these facts: A. B. Ware was the administrator of the estate of Broadhurst, and on final settlement he sought to charge the estate with the amount of a note purporting to have been executed by Broadhurst to B. M. Ware and assigned by B. M. Ware to A. B. Ware. The item was contested on the ground that neither Broadhurst nor any one authorized by him executed the note. A. B. Ware undertook to testify, in his own behalf, that the signature to the note was that of Broadhurst. Upon the authority of *Kirksey v. Kirksey,* this court affirmed the

court below in disallowing the witness to so testify; the exception in the statute affording the reason.

In *Ware v. Burch* the effect was to show a transaction. In the instance before this court the effort is to show there was no transaction. In *Kirkksey v. Kirksey* it was also attempted to show by distributees that Isaac Kirksey did not sign the note. Is there a distinction to be taken under the statute between cases where the effort is to show a transaction with one deceased and cases where the effort is to show there was no transaction? If so, it is not written in the statute, nor has this court ever so interpreted it. On the contrary, the concrete case presented in *Miller v. Cannon* invited a ruling on this assumed distinction with respect to a conversation —"statement—by" the plaintiff's intestate. If one otherwise within the rule is prohibited from testifying that there was no such conversation to which the decedent was a party, certainly the same reason and interpretation of the statute would seal the lips of such a one to testify that he did not execute the note, the mortgage, or the deed, as the case may be, in which the decedent was payee, mortgagee, or grantee. The concluding paragraph of the opinion in *Miller v. Cannon,* stating the status presented and the ruling of the court thereon, is as follows: "In this case the plaintiff, who sues as administrator, having proven by a witness a conversation respecting a mule in controversy between plaintiff's intestate and Edwards, from whom defendant derived title, the defendant introduced Edwards, who was allowed to testify that *no such conversation ever occurred with the deceased.* Under the rules declared above the court erred in admitting this evidence." • (Italics supplied.)

Nor is there any merit in the argument that at least the complainant might testify that the purported ac-

knowledgment was false. The law regards the substance and not the form. Where the law forbids at all, it inhibits indirection as well as the course that essays to directly do that which it has forbidden. The wisdom of this policy is strikingly exemplified in this instance, where the grantee and the notary are both dead, and only the actor, grantor, lives—where the only living party becomes the actor, years after the purported deed was recorded and after his adversary has passed away. The stated argument is predicated upon the assumption that the act of taking the acknowledgment was not a transaction in which the intestate personally participated. This insistence might be satisfactorily answered, and refuted, by the suggestion that it rests on an assumption in conflict with evidence in the cause tending to show that the intestate was present when the acknowledgment of the conveyance to him was taken, and hence within the statute's prohibition as defined in *Miller v. Cannon*. But response to the argument may be based on broader reasons. The prime premise on which the argument rests is that the taking of the acknowledgment was a separate and independent transaction from the conveyance itself; in other words that, even if a conveyance, apart from the acknowledgment, evidences a transaction between the parties, the act of taking the acknowledgment is not a transaction in which the deceased participated. This proposition may be conceded to be sound in so far as it asserts that two necessarily different parties, namely, the grantee and the notary, actually participate in the acts when these are abstractly considered. But the concession does not conclude in favor of the question argued. It would so conclude if the act of taking the acknowledgment was not merged into the major and only purpose of it, viz., the execution of a conveyance, impressed, when properly acknowledg-

ed, with a measure of judicial solemnity. In the absence of subscribing witnesses to the execution of a conveyance, the acknowledgment thereof is essential to due execution—to the creation of a conveyance. It is as much a part of the completed instrument as is the habendum, or any other, clause. To permit testimony directly leading to the impeachment of the acknowledgment is just as fatal to the ordinary conveyance, as such, as would be testimony in denial of the grantor's signature thereto. Indeed, to go a step forward, the direct effect of an impeachment of an acknowledgment in proper form, in a deed duly recorded, is to strike down prima facie evidence, so declared by statute (Code 1896, §§ 984, 992), of the due execution of the conveyance.

If the conveyance in hand is prima facie evidence of a transaction between the parties, it cannot be that an essential, vital part of it can be severed as a separate, independent transaction, and which severance would result, in the absence of a subscribing witness, in the destruction of the instrument as a conveyance. Furthermore, the recital in the instrument of its delivery necessarily implies the delivery of a completed conveyance. Delivery implies acceptance.—2 Words & Phrases, p. 1958 et seq. The acknowledgment is interwoven with the other parts of the instrument and refers in express terms to it; and, on the other hand, the granting clause, and also a general recital of the intent of the instrument, necessarily refer to the transaction between the two Blounts to the conveyance as such, and thus include the acknowledgment. The opinion is entertained that the complainant is prohibited by the statute from testifying, when his purported grantee is dead, that he never gave his acknowledgment, as the instrument prima facie shows. The scope and effect of this prima facie showing is aptly stated in *Alexander v. Alexander*, 71

Ala. 297, 298. See, also, *Naugher v. Sparks,* 110 Ala. 572, 18 South. 45, and *Williamson v. Mayer,* 117 Ala. 253, 23 South. 3.

In the opinion of the writer, this court should have reviewed the decree appealed from with reference to its support in the proof, and this, notwithstanding the ruling below excluding from consideration the discussed testimony of the complainant, all set forth in the record. —Code 1896, § 3826; Code 1907, § 5955; *Shows v. Folmar,* 133 Ala. 599, 32 South. 495; *Chaffin v. Muscogee Co.,* 127 Ala. 376, 383, 30 South. 555. The reversal and remandment seems to be an innovation. In my opinion the decree should be affirmed, since, without the testimony of the complainant in support of his allegation of forgery in the production of the purported conveyance, the bill is without sustaining proof.

SIMPSON, J.—I concur with Justice McClellan, in dissenting from the opinion of the majority. There cannot be any doubt of the proposition that a deed from one person to another is a transaction between them. The statute does not prohibit the interested party only from testifying that there was a transaction between them, but from testifying "as to any transaction," or, as our court has interpreted it, "in relation to any transaction." Whether his testimony be to uphold the transaction, or to strike it down, it is testimony as to, or in relation to, a transaction. I therefore think the witness was incompetent to testify.